IN THE UNITED STATES DISTRICT COURT FOR MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| GWENDOLYN WILKINS | * | |
| | * | |
| PLAINTIFF | * | |
| v | * | CASE NO.: 1:11 CV 02853 CCB |
| | * | |
| SHOPPERS FOOD, *et al* | * | |
| | * | |
| DEFENDANT | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AND ATTORNEYS FEES FOR WILLFUL SPOLIATION OF EVIDENCE**

**I.  FACTUAL BACKGROUND**

On June 11, 2010, between 7:00 AM and 7:15 AM, Plaintiff Wilkins was shopping inside of the Shoppers Food Warehouse. Plaintiff was walking towards the front of the store to return her hand cart, as she approached the front of the store she slipped on a wet substance and fell to the floor. As a result of the slippery and wet condition on the floor in Defendants premises, Plaintiff was caused to violently slip and fall to the floor, causing serious injuries to her body. Plaintiff's fall occurred in the public area of Defendants premises. Plaintiff was not contribtorily negligent.

Defendants had a duty to maintain the premises, including the floors and floor coverings in a reasonably safe condition and to see that these areas were free from damage or defects that could present a hazard to the business invitee. Defendant Shoppers Food Warehouse Corp., was responsible for insuring that its property was safe for all customers entering upon its premises.

Plaintiff Wilkins did not know that the floor was wet and neither was she warned of the possibility. Plaintiff Wilkins was a business invitee on the Defendants property. Shoppers Food Warehouse had a duty to maintain the safety of its property for its patrons and to protect them

1

from any possible injury. On the aforementioned date and time of the incident, Defendants knew or should have known of the wet condition of the floor on which Plaintiff was caused to slip and fall, and that this created a dangerous hazardous condition. Moreover, Defendants knew or should have known of the potential danger it presented to Plaintiff as well as other invitees of its establishment, but took no action to limit or eliminate the danger.

Shoppers Food Warehouse Corp, breached this duty of care by failing to properly clean its floors and failing to warn its customers of the wet floor due to water, which ultimately resulted in the injury to Plaintiff Wilkins. Shoppers had a further duty to inspect its floors and walkways and other areas open to its business invitees, to discover the presence of any condition that would present a hazard, to block off the area of said hazards, post notices of said hazards, and to remove said hazards from the premises.

As a result of Shoppers Food Warehouse Corp., negligence, Plaintiff Wilkins has suffered emotional, financial and physical damages. Plaintiff Wilkins has suffered injuries to her right leg, knee, foot and ankle. Plaintiff will continue to suffer the physical damage as she has suffered a permanent injury to her right leg, knee, foot and ankle.

On August 31, 2011, Plaintiff filed suit against the Defendants' in the Circuit Court of Maryland for Baltimore City. On October 5, 2011, this case was removed to the United States District Court of Maryland. Discovery commenced months later and from that, point Plaintiff insisted on receiving a copy of the video footage of her fall.

On May 15, 2012, the undersigned counsel spoke telephonically to Shoppers Food, Inc's Counsel Christopher Dunn regarding discovery issues as well as the video footage. During the conversation Attorney Dunn informed the undersigned counsel that his client did not preserve

video footage. Attorney Dunn indicated that because that the video footage was recorded over three (3) weeks later after the incident. **Exhibit A**

On May 21, 2012, Attorney Dunn sent a correspondence disputing the undersigned counsel's version of their respective conversations, but notes that his client did not preserve the video footage due to some alleged malfunction. He also indicated that his client had no obligation to preserve the evidence because his client never received an evidence preservation letter. **Exhibit B**

On July 3, 2012, Counsels for the respective parties met pursuant to Local Rule 104-7. During the conversation, Attorney Dunn's represented to the undersigned counsel that the video was deleted as result of human error and not as a result of a malfunction of the CCTV System as previously stated. **Exhibit C.** Attorney dispute telling the undersigned Counsel this in his written statement dated July 5, 2012. **Exhibit D.** The undersigned counsel stands by what Attorney Dunn represented at the July 3, 2012 conference.

As will be demonstrated *infra*, the Defendants purposefully failed to preserve an essential piece of evidence in this case, thus causing Plaintiff substantially harm therefrom.

By ignoring its clear duty to preserve relevant documents, Defendant has unfairly, unilaterally, and permanently deprived the Plaintiff of evidence central to her claims. The prejudice caused by Defendant's conduct cannot be ignored, nor should Defendant be permitted to benefit from its own misconduct by gaining an advantage through the loss of relevant evidence. In order to minimize prejudice to the Plaintiff and affirm the import of a party's duty to preserve evidence, this Court should order the reasonable issue-related sanctions and jury instructions requested, as is consistent with governing precedent.

Because of the nature and extent of Defendant's loss and/or destruction of relevant evidence, no single, one-size-fits-all sanction can effectively minimize the prejudice caused by Defendant's spoliation of evidence.

Two types of sanctions are therefore necessary to address Defendant's spoliation: issue-related sanctions and a limited jury instruction.

Issue-related sanctions are necessary to reduce the prejudice from Defendant's spoliation of a central pieces of evidence: (a) the video of Plaintiff's fall. The limited jury instruction sought would address the harms caused by Defendant's spoliation

## II. ARGUMENT STANDARD OF REVIEW

Generally, companies maintain broad discretion over their routine ESI retention policies and may, under normal circumstances, implement policies that automatically delete e-mails. *See Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510-11 (D. Md. 2005). However, when companies reasonably anticipate litigation, they must suspend their routine ESI retention policies and implement litigation holds to preserve any relevant evidence. See *Goodman v. Praxair Serv.'s, Inc.*, 632 F. Supp. 2d 494, 511-12 (D. Md. 2009) (citing *Thompson v. U.S. Dep't of Hous. & Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003) (internal citation omitted); *Broccoli*, 229 F.R.D. at 510 (citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). If an adverse party fails to impose litigation holds and destroys relevant and helpful evidence, movants may request sanctions for spoliation. See *Silvestri,* 271 F.3d at 590 (defining spoliation as the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation").

To resolve the issue of appropriate sanctions for spoliation, the court must consider the

source and nature of its authority to impose such sanctions. Two "main" sources supply the court with authority to impose sanctions against a party for spoliation of evidence. Goodman, 632 F. Supp. 2d at 505.

First, there is the "court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct 'which abuses the judicial process.'" *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 263-64 (2007) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)); accord *Thompson*, 219 F.R.D. at 100 (quoting *Silvestri*, 271 F.3d at 590); see also *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); F*lury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); In re *NTL, Inc*. Secs. Litig., 244 F.R.D. 179, 191 (S.D.N.Y. 2007).

Second, if the spoliation violates a specific court order or disrupts the court's discovery plan, sanctions also may be imposed under Fed. R. Civ. P. 37. *United Med. Supply Co*., 77 Fed. Cl. at 264, cited in *Sampson,* 251 F.R.D. at 178. Id. at 505-06 (some citations omitted).

The court's inherent authority arises "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *United States v. Shaffer Equip. Co*., 11 F.3d 450, 462 (4th Cir. 1993). For almost two centuries, it has been established that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution. . . . because they are necessary to the exercise of all others" and they enable courts "to preserve [their] own existence and promote the end and object of [their] creation." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33-34 (1812); see *Chambers,* 501 U.S. 32, 43 (1991) (quoting Hudson, 7 *Cranch* at 34); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (same), superseded on other grounds by

statute as stated in <u>Morris v. Adams-Millis Corp</u>., 758 F.2d 1352, 1357 n.7 (10th Cir. 1985); <u>Shaffer Equip. Co</u>., 11 F.3d at 462 ("This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers."). Thus, undergirding this authority "is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." Pen*sion Comm. of Univ. of Montreal Pension Plan v. Banc of Am*. Sec., 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010).

However, the court's inherent authority only may be exercised to sanction "bad-faith conduct," Chambers, 501 U.S. at 50, and "must be exercised with restraint and discretion," id. at 44; see Shaffer Equip. Co., 11 F.3d at 461-62 (the court's inherent power "must be exercised with the greatest restraint and caution, and then only to the extent necessary"). "'[I]ts reach is limited by its ultimate source—the court's need to orderly and expeditiously perform its duties.'" <u>Rimkus Consulting Group, Inc. v. Cammarata,</u> 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010) (quoting Newby v. Enron Corp., 302 F.3d 295, 302 (5th Cir. 2002). Thus, the court relies instead on statutory authority or rules when applicable. Id. at 611-12.

### III. <u>DEFENDANT WILLFULLY BREACHED IT'S DUTY TO PRESERVE EVIDENCE.</u>

#### a) <u>Defendant had a Duty to Preserve the Video Footage and Breached That Duty.</u>

There were four (4) events triggering the need of the Defendant to preserve electronically stored information (ESI):

**a. Plaintiff's June 10, 2010 injury at their location;**
**b. Defendant's in house claim adjuster Kevin Brody's opening of a claim; Exhibit E**
**c. Plaintiff's June 22, 2010 letter to claims adjuster Kevin Brody regarding her incident; Exhibit F**
**d. Defendant's June 22, 2010, review of Plaintiff's Claim history in anticipation of litigation. Exhibit G**

The Defendant alleges in its correspondence that it did not preserve evidence because the system malfunctioned and that Plaintiff never sent an evidence preservation notice, hence they had no obligation to preserve the video footage of the incident. ¶**Exhibit B**

Interestingly, during the deposition of the Defendant's <u>Corporate Designee</u> Jeffrey Greene testified as follows regarding Shopper's failure to make any attempt to recover the video:

**Page 33 of Deposition Transcript- Attached as Exhibit H**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | **And item number 3.** |
| JEFFERY GREENE | **"The key person who completed the investigation 10 and this worksheet should immediately call in the 11 report."** |
| KIM PARKER, ESQ | **And correct to say that you were the key person 16 that's referenced in this report?** |
| JEFFERY GREENE | **Yes, ma'am.** |
| KIM PARKER, ESQ | **And number 5.** |
| JEFFERY GREENE | **"Mail this worksheet along with <u>*photos, video*</u>s, 20 estimates, et cetera directly to the appropriate regional 21 claim office. Please label these documents with the 22 store number, claimant name and date of loss."** |

**Page 34 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | **Do you know why you need to do that?** |
| JEFFERY GREENE | **Again, it's policies of our company.** |

The Defendant's corporate designee admitted that it was the policy of the Defendant to submit photos and videos of incidences, like the one Plaintiff complained of to its Risk Management office.

**Page 42 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | **What is a CCTV system?** |
| JEFFERY GREENE | **a video recording of areas within the store.** |

7

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | Do you know if it was operational on the date of this incident? |
| JEFFERY GREENE | I do know that it was recording, yes. |

**Page 43 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | I note that you said the CCTV system was functional, correct? |
| JEFFERY GREENE | It recorded, yes, ma'am. |


**Page 46 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | Did they have any responsibility for maintaining of the CCTV system? |
| JEFFERY GREENE | No. |
| KIM PARKER, ESQ | Could you tell me who was responsible for that? |
| JEFFERY GREENE | Corporate office, security division. |
| KIM PARKER, ESQ | Could you describe how the information is 16 recorded? Is it in a computer? |
| JEFFERY GREENE | It's a hard drive computer base, fixed cameras recording several locations within the store. |

**Page 47 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | What is the company policy about providing video footage to the corporate office when an incident occurs in the store? |
| JEFFERY GREENE | That would be up to the security department and corporate. |
| KIM PARKER, ESQ | I don't understand. |
| JEFFERY GREENE | The video records live feed constantly and 17 overwrites the information. If there was something the 18 security department felt that they wanted, they would 19 come in and record it or copy it or they call it burning 20 it to a CD |

After the Corporate Designee completed the claim form he took no action to make sure that the video tape was preserved. In fact, he stated that the Risk Management department of the Defendant was responsible for making copies of video footage.

On May 21, 2012, the Defendant provided Plaintiff with a privilege log, in this log they indicated the following:

| June 22, 2010 | ISO Claim Search | ISO Claim Search Report on Plaintiff | Anticipation of Litigation and Impeachment Evidence |

**Exhibit I**

This is an admission on behalf of the Defendant that they anticipated litigation as early as June 22, 2010, which was 11 days after the incident with the Plaintiff. The Defendant had a duty to preserve the evidence when they reasonably believed litigation could be anticipated. <u>Zubulake v. UBS Warburg LLP</u>, 220 F.R.D. 212 (S.D.N.Y. 2003); <u>Sampson v. City of Cambridge</u>, 251 F.R.D. 172, 181 (D. Md. 2008); <u>PML North America v. Hartford Underwriters Insurance Co</u>., 2006 U.S. Dist. LEXIS 94456 (E.D. Mich. 2006); <u>Silvestri v. General Motors</u>, 271 F.3d 583, 589 (4th Cir. 2001).

Furthermore, Plaintiff directs the Court to the matter of <u>**Gwennette Williams vs. Sav-A-Lot Food Store**</u>, , **US District Court for Eastern District of Pennsylvania,11-4463**. **Exhibit J**

In this case Ms. Williams filed a Motion for Sanctions for the Defendant's failure to turn over relevant information, mainly video footage of the incident.

In response the Defendant who is also a part of Supervalu, Shoppers parent company made the following responses regarding Supervalu policy and procedures regarding preservation of video footage:

"The Save-A-Lot food store wherein the alleged personal injury occurred maintained a "Rapid Eye" surveillance video system. This surveillance system was in use at the time of Williams' alleged incident. Rapid Eye surveillance video is captured by Save-A-Lot in anticipation that it may provide evidence for both the prosecution of shop lifters and the defense of civil litigation. The nature of the system is such that it creates digital images of contemporaneous events in the store via multiple video cameras. The digital images are not store indefinitely on a tape such as a VHS tape of yesteryear. Instead, the images are written to a computer hard drive. This hard drive has limited storage capacity, and when that storage capacity is reached, the system begins overwriting the oldest digital images stored. This way, the system continues to operate in a continuous loop."

**"When a personal injury event such as that reported to the store by Williams occurs, a CD copy of the incident is made from the hard drive before the digital images are overwritten. This copy is made directly in anticipation of civil litigation. Absent an event triggering a concern of litigation (or criminal prosecution), the CD copy would never be made and the original hard drive digital image would be overwritten in the course of the operation of the system."**

**Exhibit K Page 2¶4**

Although the Defendant failed to list all corporations affiliated pursuant to Local Rule 103.3, Plaintiff attaches the same as **Exhibit L** , as evident that Save-A-Lot is also owned by Supervalu and follows the same procedures.

Finally, On September 4, 2010, Daniel Day[1] a Supervalu Sr. Attorney, gave a seminar at the Second Annual Intermountain Discovery Conference, which shared an overview of Litigation Hold in light of Systems, Processes, and Challenges. In his seminar, he discusses Supervalu's Systems, Processes & Challenges regarding litigation holds and evidence preservation which demonstrates that Supervalu is aware of its legal obligations to preserve evidence in personal injury cases. **Exhibit M.**

As is evident, the Defendant has sufficient policies and procedures regarding their duty to preserve evidence.

---

[1] Speaker Expert: Daniel S. Day is a Senior Attorney with SUPERVALU, Inc. where he focuses on commercial litigation management, supervision of outside counsel, and dispute resolution in the areas of real estate, construction, business torts, contracts, intellectual property, bankruptcy,

The prejudice caused by Defendant's plain and unequivocal violation of its duty to preserve relevant evidence must be addressed. The negative consequences of Defendant's spoliation fall squarely on the Plaintiff, to her detriment. Without issue-related sanctions and instructions designed to address the specific harms Defendant's improper spoliation caused, Defendant would freely benefit from its own improper destruction of evidence. Such an outcome both defies fundamental fairness and eviscerates the purpose and force behind the rule requiring preservation of evidence.

b) **Defendants' were Grossly Negligent In Failing to Preserve the Video and is therefore culpable.**

In the District of Maryland, movants seeking spoliation sanctions must first prove that the adverse party destroyed relevant and helpful evidence. See *Goodman*, 632 F. Supp. 2d at 512. If an adverse party destroyed relevant evidence, then movants must prove that the adverse party did so with sufficient culpability for the sanctions sought. Id. at 518 (stating that an adverse party's culpability will affect the severity of sanctions). However, regardless of the level of culpability, movants must prove that the lost evidence "would have supported the claims and defenses of the [movant]." *Sampson*, 251 F.R.D. at 182-83 (quoting *Thompson*, 219 F.R.D. at 101) (internal citation omitted).

When an adverse party's culpable spoliation destroys helpful and relevant evidence, courts may impose sanctions to "level the evidentiary playing field."3 *Broccoli*, 229 F.R.D. at 510 (quoting <u>Vodusek v. Bayliner Marine Corp</u>., 71 F.3d 148, 156 (4th Cir. 1995)). Sanctions imposed by courts must be limited to those "necessary to redress conduct 'which abuses the judicial process.'<u>" Silvestri</u>, 271 F.3d at 590 (quoting *Chambers*, 501 U.S. at 45-46); see also id.

(courts must mold sanctions to "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine").

Despite their own policies of preserving video footage in anticipation of litigation, they failed to preserve a key piece of evidence that was the video in this case. The Defendant represented to the Plaintiff that there was a malfunction with the recording where it could not be transferred to a CD or DVD (**Exhibit D**).

On June 8, 2012, The Defendant's Corporate Designee testified that the videos were saved to the CORPORATE (SUPERVALU) Hard drive:

**Page 46 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | **Did they have any responsibility for maintaining of the CCTV system?** |
| JEFFERY GREENE | **No.** |
| KIM PARKER, ESQ | **Could you tell me who was responsible for that?** |
| JEFFERY GREENE | **Corporate office, security division.** |
| KIM PARKER, ESQ | **Could you describe how the information is 16 recorded? Is it in a computer?** |
| JEFFERY GREENE | **It's a hard drive computer base, fixed cameras recording several locations within the store.** |

It therefore defies logic that the Defendant could not have preserved the video on it's hard drive which would have been consistent with its prior policies represented to the United States District Court for the Eastern District of Pennsylvania, wherein it preserves all video for "triggering events" in personal injury matters.

The Corporate Designee also testified that he failed to notify Corporate that he could not burn the CD of the recording which was grossly negligent on his part:

**Page 63 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | So you have no personal knowledge of anyone 5 other than the persons that you have described who might 6 have seen this video? |
| JEFFERY GREENE | I have no personal knowledge -- |
| KIM PARKER, ESQ | Yes. |
| JEFFERY GREENE | -- of someone requesting that? I know that I 10 was unable to make a copy of that. I don't recall other 11 than that. I can believe, I would presume Ultra-Care 12 requested it and we were unable to make that access. |
| KIM PARKER, ESQ | Do you know why that is? |
| JEFFERY GREENE | Something wrong with the equipment, I'm not aware. I don't know why. |
| KIM PARKER, ESQ | When did you learn that something was wrong with the equipment? |
| JEFFERY GREENE | That morning evidently when we tried to burn it. We were unable to make a copy. |

**Page 64 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | You said this is on a computer? |
| JEFFERY GREENE | It's a hard drive, yes, ma'am. |
| KIM PARKER, ESQ | So ideally the footage is saved on the hard drive, correct? |
| JEFFERY GREENE | For a short time. |
| KIM PARKER, ESQ | How long is a short time? |
| JEFFERY GREENE | It runs like a continuous loop. It runs 11 approximately two to three weeks, then just copies over it, determining on the activity that the cameras view |

**Page 65 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | Did the video -- do you have any -- let me back up. You've indicated that their equipment did not allow you to tape the video of Ms. Wilkins falling. Were you able to tape any footage of the water being left on the 22 floor? |

**Page 66 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| JEFFERY GREENE | I was unable to tape anything. |
| KIM PARKER, ESQ | When circumstances like that happen, as a manager, director -- remind me the name. |
| JEFFERY GREENE | Store director. |
| KIM PARKER, ESQ | you have any -- let me start over. What is 6 the policy of Shoppers when something like that happens? Where you're going, attempting to record or make a copy 8 of a video, somebody's been injured in your store, you 9 know you filed a claim here, what is the policy when the 10 equipment is not cooperating? What are you supposed to 11 do? |
| JEFFERY GREENE | Wouldn't say it's a policy but it's probably 13 best practices to report it to the area of 14 responsibility. |
| KIM PARKER, ESQ | Who would that area of responsibility be? |

**Page 67 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | What efforts did you make to fix the problem? |
| JEFFERY GREENE | I can't remember the exact issue for that day, that incident, but on a normal circumstance, I would report it to the department to try to get a repair. |
| KIM PARKER, ESQ | Did you, in fact, do that in this instance? |
| JEFFERY GREENE | I do not recall that at this point today. I 17 don't remember. |

The Defendant's Corporate Designee also testified that he was aware that the video would re-record over itself if the evidence was not preserved:

**Page72 of Deposition Transcript**

| Counsel/Deponent | Questions/Answer |
|---|---|
| KIM PARKER, ESQ | Were you aware at the time that the information |

|  | 5 would only be stored for three weeks and after three<br>6 weeks, it would be gone from the system? |
|---|---|
| JEFFERY GREENE | I believe so, yes. |
| KIM PARKER, ESQ | What actions did you take to try to prevent the loss within that three-week period? |
| JEFFERY GREENE | I don't recall at this time. I don't remember. 11 Again, I don't have it written, I don't remember what I 12 did. I presumed -- presumption is something else. I may 13 have reported it to try to get it repaired. I don't 14 know. |
| KIM PARKER, ESQ | How long is a short time? |
| JEFFERY GREENE | It runs like a continuous loop. It runs<br>11 approximately two to three weeks, then just copies over it, determining on the activity that the cameras view |

The Defendant's Risk Management took no precaution to attempt to preserve the video evidence in this case. It is therefore logical to conclude that they deliberately failed to preserve the evidence because the video did not support their defense in this case. They have acted with the requisite knowledge and intent necessary for this Court to award sanctions.

### c) The video footage was relevant and helpful to this case.

Adverse parties need not preserve all evidence, only "unique, relevant evidence that might be useful to an adversary." *Zubulake*, 220 F.R.D. at 217. The evidence must be "in existence at the time the duty to preserve attaches, and any relevant documents created thereafter," and extends only to what an adverse party "knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." Id. at 217-18 (citation omitted). Proving relevance requires "a reasonable possibility, based on concrete evidence, rather than a fertile imagination" that any lost ESI would have been favorable to movants' claim. Sampson, 251 F.R.D. at 180 (quoting *Gates Rubber Co. v. Bando*

15

*Chem. Indus.,* 167 F.R.D. 90, 104 (D. Colo. 1996) (concrete evidence is "evidence tending to show that the document actually destroyed or withheld is the one as to whose contents it is desired to drawn an inference . . . . [c]are should be taken not to require anything like specific details of contents, but merely such evidence as goes to general marks of identity.")) (internal citation omitted).

In Maryland, a property owner owes separate and distinct duties to an individual injured on the property depending upon whether the individual is an invitee, licensee or trespasser. *Sherman v. Suburban Trust Co*., 282 Md. 238 (1978). As an invitee, the individual is either invited or permitted to be on the property as part of the property owner's business. Id. As

The highest duty owed by a property owner is to a business invitee. A property "…owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect him from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover." Id. (citations omitted). See also *Rowley v. Mayor*, 305 Md. 456, 464 (1986)("[T]he owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect him from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety will not discover.").

The law in Maryland clearly and unequivocally states that, there must be either specific evidence that the defendant or its employee created the condition or actually observed the condition (actual notice), or there is some admissible evidence to establish that the specific hazardous condition remained on the floor for a substantial length of time before the incident (constructive notice) in order to establish a prima facie case of negligence and survive a motion for judgment. See *Joseph v. Bozzuto Management Co*., et al., 173 Md. App. 305, 918 A.2d 1230 (2007).

In the case at bar, the Defendants' have all alleged that they have viewed the video footage and that there were warning signs visible to the Plaintiff, which warned her of the defect. Plaintiff has testified that there were no warning signs present. Moreover, Plaintiff's husband also indicates that there were no warning signs. Furthermore, the Defendant alleges that the video shows a customer moving a sign, which may have contributed the Plaintiff to fall. Plaintiff recalls the person that moved the sign being an employee, not a customer.

It is anticipated that the Defendant will now allege in a future dispositive Motion or at trial, that Plaintiff was warned of the defect and therefore assumed the risk for her injuries.

The best evidence in this case is the video itself that could prove negligence against the Defendants' or support their defense in this action. Federal Rule of Evidence 1002 which provides in part:

> **"To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required." As the Rule's language states, the Rule applies to the circumstance where the proponent seeks "to prove the content" of a document. The Rule exists to afford guarantees against inaccuracies and fraud by requiring that the original of the document be offered, subject to exceptions in Rule 1003 (allowing the use of duplicates)"**

## **CONCLUSION**

For the reasons detailed above, issue-related sanctions and a limited jury instruction are legally warranted and necessary to reduce the prejudice caused by Defendant's spoliation of crucial video evidence. This Court should therefore issue an Order holding that:

(1) Defendant is precluded from eliciting testimony, introducing evidence, indicating in opening or closing arguments, or in any way suggesting that Plaintiff was negligent in this case;

(2) The fact-finder can infer from Defendant's failure to preserve video s would have supported Plaintiffs' claims and not supported Defendant's defenses.

(3) The fact-finder can conclude from Defendant's failure to preserve the video would have been favorable to Plaintiffs' claims and rebutted Defendant's asserted justifications and defenses;

(4) The fact-finder should be instructed that Defendant had a duty to preserve video that were relevant to this case and Defendant violated that duty and allowed relevant evidence to be purged.

Respectfully submitted,

/s/ Kim Parker

_____
KIM PARKER, ESQUIRE
COUNSEL TO PLAINTIFF
Federal Bar No.: 23894
Law Offices of Kim Parker, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218
(410) 234-2621, Office
(410) 234-2612, Facsimile
Email: kp@kimparkerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing Motion for Sanctions was mailed first class mail postage prepaid or by electronic mail on this **21st** day of **September**, 2012 to:

**CHRISTOPHER R DUNN, ESQUIRE**
*Via Electronic Email: cdunn@decarodoran.com*

**ROBIN FINIZIO KESSLER, ESQUIRE**
*Via Electronic Email: Kessler@nationwide.com*

/s/ Kim Parker_____
Kim Parker, Esq.
Counsel for Plaintiff